**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| **W.B.,** a minor, by and through his parents and next friend, **Zach Baker** and **Audrey Baker** et al. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 4:19-cv-00682-HFS |
| **Crossroads Academy-Central Street** et al. | ) ) ) | |
| Defendants | ) ) | |

## CROSSROADS ACADEMY'S MEMORANDUM IN OPPOSITION
## TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

Defendants Crossroads Academy-Central Street ("Crossroads"), Karis Parker ("Parker") and Eva Copeland ("Copeland") (collectively, the "Crossroads Defendants"), by and through their undersigned counsel, ask the Court to deny Plaintiffs' motion for a temporary restraining order ("TRO"). Granting a TRO is a drastic remedy that requires the movant to satisfy a heavy burden, and Plaintiffs have not come close to satisfying that burden.

Plaintiffs are parents seeking to avoid filling out a Missouri Department of Health and Senior Services ("DHSS") form to affirm their religious objection to vaccination of their child, W.B., a Crossroads student. The parents' refusal to complete the form has put the child's continued public school enrollment in jeopardy and has created the situation for which Plaintiffs now seek this Court's emergency relief.

The Crossroads Defendants are simply following a facially neutral Missouri regulation in requiring execution of the DHSS form. The form merely requires the parents to provide their child's name, check the boxes of the particular vaccines to which they have a religious objection, and provide a signature. This is not a matter of constitutional significance, nor is there support for

a ruling that this practice is likely to violate Missouri state statutes. Crossroads has provided Plaintiffs ample time and opportunity to obtain and complete the form.

Ultimately, Crossroads must safeguard the health and safety of the hundreds of students who attend its schools. The Crossroads Defendants are merely complying with DHSS's rules for documenting religious objections to otherwise compulsory vaccinations—a system that does not appear to violate Plaintiffs' rights.[1] Although it is merely the *de facto* facilitator of DHSS's system of tracking students who attend unvaccinated because of a parent's religious objection, Crossroads shares an interest with DHSS to ensure the process remains orderly and effective. This is particularly so if there is an outbreak of vaccine-preventable disease.

Crossroads has fifteen students in the same situation as W.B., so his request has implications beyond a single student. Crossroads asks the Court to deny Plaintiffs' request to order them to violate DHSS's rules by allowing W.B. to attend without a submitting a valid religious exemption form.

## BACKGROUND

W.B. is a currently enrolled as a kindergartener at Crossroads. Doc. 1 at 2. The Crossroads Defendants understand that he has received no vaccinations. *Id.* The Crossroads Defendants further understand W.B.'s parents, Zach and Audrey Baker (collectively with W.B., "Plaintiffs"), object to vaccinating W.B. on religious grounds. *Id.* Plaintiffs allege they submitted two statements to Crossroads attesting to their religious objection to vaccinating W.B. *Id.* at 2-3. Neither such objection is attached to the Complaint, to the TRO motion papers, or to the papers seeking a preliminary and permanent injunction. An appropriately redacted copy of the parents' handwritten

---

[1] The Crossroads Defendants understand the state defendants—DHSS Director Randall Williams and Missouri Attorney General Eric Schmitt ("State Defendants")—intend to fully defend the legality of the regulatory scheme at issue in this suit, but do not plan to take a position with regard to Plaintiffs' request for a TRO.

13515078v.1

request for exemption is attached hereto as Exhibit 1. The handwritten objection states: "Pursuant to Missouri Statute 167.181, I am making a religious objection to vaccinations on behalf of my child [W.B.], & am giving it to the school administrator. I am willing to fill out a form if the school provides to me which they will not do." *Id.*

The Crossroads Defendants informed Plaintiffs that their written statement was insufficient because Missouri law required them to fill out a specific form, the "Imm.P.11A" form (the "Form") published by DHSS. Doc. 1 at 2-3. Crossroads has no record that the parents submitted a signed form of any kind. Dec. of Eva Copeland, ¶ 10, attached hereto as Exhibit 2. Copeland was not able to provide a copy of the Form to Plaintiffs because she understood DHSS requires parents to directly obtain such forms themselves; she informed Plaintiffs that they could obtain a Form from the Kansas City health department or W.B.'s pediatrician. *Id.* at ¶ 8. Copeland double-checked with the Kansas City and Jackson County health departments in an effort to obtain the Form but those departments confirmed parents must obtain copies of the Form themselves. *See id.* at ¶ 9.

Without an executed Form on file, state law prohibits W.B. from continuing to attend Crossroads. *See* 19 CSR 20-28.010(1)(A) ("Students cannot attend school unless they are properly immunized and can provide satisfactory immunization or unless they are exempted."); 19 CSR 20-28.010(1)(C).2. The DHSS regulation specifically requires parents seeking a religious exemption to vaccinations to complete an *original* DHSS form to affirm that objection. 19 CSR 20-28.010(1)(C).2 ("This [religious] exemption must be provided on an <u>*original*</u> Department of Health and Senior Services' form Imm.P.11A[.]") (emphasis added).

The Crossroads Defendants have extended the grace period during which Plaintiffs (and similarly situated parents) can obtain, fill out, and submit a copy of the Form to September 16,

2019.  *See* Doc. 7-1.  The Crossroads Defendants understand that Plaintiffs have not yet obtained and filled out a copy of the Form to submit on W.B.'s behalf.

**ARGUMENT**

## I.      Standard for Granting a TRO

"In determining whether to grant a temporary restraining order the Court considers: (1) the threat or irreparable harm to the movant; (2) the balance between this harm and the injury that granting the injunction will inflict on the non-moving party; (3) likelihood that the moving party will prevail on the merits; and (4) the public interest."  *Fambrough v. Uber Techs., Inc.*, No. 4:19:cv-0398-DGK, 2019 WL 2411442, at *1 (W.D. Mo. Jun. 7, 2019), citing *Phelps-Roper v. Nixon*, 509 F.3d 480, 484 (8th Cir. 2007).  "No single factor is determinative; they must be 'balanced to determine whether they tilt towards or away' from granting the injunction."  *Fambrough*, 2019 WL 2411442, at *1, quoting *Noodles Development, LP v. Ninth Street Partners, LLP*, 507 F. Supp. 2d 1030, 1034 (E.D. Mo. 2007).   "A temporary restraining order is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Fambrough*, 2019 WL 2411442, at *1 (internal quotation marks omitted).

## II.      Plaintiffs Have Failed to Satisfy the Requirements for a TRO.

### A.      Plaintiffs Have Failed to Establish a Likelihood of Success on the Merits.

Plaintiff's motion for a TRO should be denied, first and foremost, because Plaintiffs have failed to establish a likelihood of success on the merits.  "When evaluating a movant's likelihood of success on the merits, the court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are decided."  *Jet Midwest Int'l Co., Ltd. v. Jet*

4

*Midwest Group, LLC*, Case No. 18-cv-06018-FJG, 2018 WL 7959112, at *3 (W.D. Mo. Dec. 12, 2018), quoting *Kodiak Oil & Gas (USA) Inc. v. Burr*, 303 F. Supp. 3d 964, 973 (D.N.D. 2018).

As an initial matter, it is beyond question that the power to compel vaccination of schoolchildren is within the police powers of the state and that neither the Free Exercise Clause nor any other express or implied part of the U.S. Constitution creates a constitutional right to an exemption from such mandatory vaccinations. As a sister court to this Court has explained:

> Plaintiff's challenge to the constitutionality of mandatory immunization warrants no extensive discussion. It has long been settled that individual rights must be subordinated to the compelling state interest of protecting society against the spread of disease. The Supreme Court long ago held that a state may adopt a program of compulsory immunization for school-age children. It is also well settled that a state is not required to provide a religious exemption from its immunization program. The constitutional right to freely practice one's religion does not provide an exemption for parents seeking to avoid compulsory immunization for their school-aged children.

*McCarthy v. Boozman*, 212 F. Supp. 2d 945, 948 (W.D. Ark. 2002) (internal citations omitted). Thus, all of Plaintiffs' arguments directed at the constitutionality of Missouri's mandatory vaccination regime, such as the argument that it violates W.B.'s right to bodily integrity (*see, e.g.,* Doc. 1 at ¶¶ 1-4, 32, 47-48, 92, 100, 108; Doc. 3 at 1-8), can be rejected summarily.

Notwithstanding the fact that such an exemption is not constitutionally required, Missouri has opted to include a religious exemption within its mandatory vaccination regime. Mo. Rev. Stat. § 167.181.3 provides it is unlawful for a student to attend school without the required DHSS immunizations *unless* "one parent or guardian objects in writing to his school administrator against the immunization of the child, because of religious beliefs or medical contraindications."

That same statute charges DHSS with "supervis[ing] and secur[ing] the enforcement of the required immunization program" and promulgating rules and regulations governing it. *Id.* § 167.181.1. Pursuant to this authority, DHSS has promulgated a regulation that requires religious

5

objections take a particular written form, the Form identified above. *See* 19 CSR 20-28.010(1)(C).2. The regulation specifically provides:

> A student shall be exempted from the immunization requirement of this rule as provided in section 167.181, RSMo, if one (1) parent or guardian objects in writing to the school administrator that immunization of that student violates his/her religious beliefs. *This exemption must be provided on an original Department of Health and Senior Services' form Imm.P.11A*, and shall be signed by the parent or guardian and placed on file with the school immunization health record.

*Id.* (emphasis added).

This case is entirely about the Form. Based on the information presently available to them, the Crossroads Defendants do not dispute that W.B. would be entitled to a religious exemption were his parents to comply with the requirements of 19 C.S.R. 20-28.010(1)(C).2 by filling out a Form on his behalf and submitting it to Crossroads. If this occurred, W.B.'s non-immunized status would not interrupt his continued enrollment at Crossroads and there would be no risk of his removal on September 16, 2019. But Plaintiffs object to the Form itself, contending the requirement that they fill it out violates their constitutional and statutory rights. Plaintiffs have thus structured this lawsuit to allege the Crossroads Defendants should ignore clear state law and allow W.B. to attend based on their written statement.

Plaintiffs' approach ignores Crossroads' obligation to follow a facially neutral state regulatory system. Because Plaintiffs have not identified a plausible violation flowing from the requirement that they document their religious objection using the Form, they have no likelihood of success on the merits.

    1.    **Requiring the Bakers to Sign the Religious Exemption Form is Not a Burden on their Religious Freedom.**

Throughout their complaint and motion papers, Plaintiffs suggest Missouri's requirement that religious objectors must fill out the Form in order to validly claim a religious exemption from

6

vaccination impermissibly burdens the free exercise of their religion. Again, Crossroads did not create the Form at issue—it will ultimately be DHSS's responsibility in this suit to explain its reasons for the particular form and requirement that parents obtain it personally.

Regardless, the Crossroads Defendants observe that "[a] law that is neutral and of general applicability need not be justified by a compelling government interest *even if the law has the incidental effect* of burdening a particular religious practice[.]" *Boone v. Boozman*, 217 F. Supp. 2d 938, 952-53 (E.D. Ark. 2002) (quoting *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 531 (1993)) (emphasis added). Thus, to raise a free exercise claim arising from the Form, Plaintiffs must demonstrate that the requirement that they fill out the Form "target[s] religious belief." *Id.* at 953. They have failed to do so.

First, while defense of the Form is appropriately left to the State Defendants, it cannot be the case that the Form "targets religious belief" because only people seeking a religious exemption need to fill it out. The entire purpose of the Form (and the statutory and regulatory regime it is part of) is to afford special benefits to people on the basis of their religious convictions – the right to opt out of an otherwise mandatory vaccination system, a benefit that people with purely secular objections to vaccination are not entitled to claim. This is an effort to accommodate religious practice and belief, not an invidious attempt to target it.

And, of course, parents seeking medical exemptions from vaccinations need to fill out a similar form, which likewise can only be obtained at a DHSS office or from a medical professional, in order to obtain their exemption, further establishing the apparent fundamental neutrality of DHSS's vaccine exemption regime. 19 CSR 20-28.010(1)(C).1 ("A student shall be exempted from the immunization requirements of this rule as provided in section 167.181, RSMo, upon signed certification by a licensed doctor of medicine (MD), doctor of osteopathy (DO), or his or

7

her designee indicating that either the immunization would seriously endanger the student's health or life or the student has documentation of disease or laboratory evidence of immunity to the disease. The exemption shall be provided on an *original* Department of Health and Senior Services' form Imm.P.12 and shall be placed on file with the school immunization health record for each student with a medical exemption.") (emphasis added).

While Plaintiffs' briefs blend arguments, making the precise nature of their objection difficult to discern, it appears that the nature of Plaintiffs free exercise objection is that the form contains mild pro-vaccination language, which they evidently regard as insufficiently respectful of their anti-vaccination religious beliefs.[2] It is well-established the government itself has a right to speak and there is no general First Amendment right to be free of government speech that the listener finds upsetting or uncongenial. *See Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467-68 (2009); *see also Consol. Edison Co. of New York v. Pub. Serv. Comm'n of New York*, 447 U.S. 530, 548 (1980) (Marshall, J., concurring) (consumers did not have a right to be free of "offensive" political inserts in bills from public utility). And, as discussed above, Missouri has a compelling interest in promoting the vaccination of school-aged children—an interest so compelling that Missouri could, if it wanted to, compel the vaccination of W.B. over his parents' religious objections. *McCarthy*, 212 F. Supp. 2d at 948. Missouri has opted not to do so, and allows for religious exemptions. Crossroads' role here is merely complying with the state's religious exemption system—which confers a *benefit* to Plaintiffs.

---

[2] To the extent that Plaintiffs' objection is to having to fill out a form at all, it is well-established that it is not a violation of an individual's free exercise rights to require them to fill out a form to receive a religious accommodation from a government source. *See Resnick v. Adams*, 348 F.3d 763, 771 (9th Cir. 2003) (requiring prisoner to complete a standard prison form to obtain kosher meals does not violate his free exercise rights); *Moore v. Bishop*, Civil Action No. GJH-18-934, 2019 WL 1331352, at *6 (D. Md. Mar. 25, 2019) (same).

13515078v.1

The Crossroads Defendants require use of the Form because Missouri law requires it, and obviously will largely defer to the State Defendants with respect to the substantive defense of its constitutionality.  But they note that, as they understand the relevant case law, adopting religious exemptions from an otherwise mandatory vaccination regime does not strip the state of Missouri of the right to promote vaccination via government speech.  There is no general First Amendment right to be free of hearing or reading speech containing a neutral presentation of the facts regarding the benefits of vaccination and the risks of non-vaccination, even where there is some theoretical risk that the government speech, if credited, might cause the listener to doubt the religious beliefs to which he or she ascribes.  Plaintiffs have certainly identified none.

Again, while the defense of the Form is a matter for State Defendants, it is important to note that a claim of a constitutional violation from government speech is particularly unpersuasive where, as here, the Form does not require the signatory to certify that he or she has actually read the statement concerning vaccines it contains.  *See* Exhibit 3.  Plaintiffs could avoid the allegedly offensive government speech simply by not reading the allegedly offensive government speech.  As with the offended recipients of political messages in their utility bills in *Edison*, Plaintiffs "may effectively avoid further bombardment of their sensibilities simply by averting their eyes" from the statements at the top of the Form.  447 U.S. at 542 (internal quotation marks removed).  This further attenuates the already minimal burden on them.

Nor is it clear how the unavailability of the Form online and Crossroads' inability to procure the Form to supply it to Plaintiffs creates a free exercise violation.  DHSS requires parents seeking the exemption to go to a DHSS office or a hospital or physician's office to receive one.  Plaintiffs have not claimed to have a religious opposition to all medical care or to visiting DHSS offices, so presumably requiring them to travel to one to pick up a copy of the Form would not

9

violate their religious beliefs. The Crossroads Defendants are not aware of any plausible "captive audience" concerns, since Plaintiffs have not provided any basis for concern that they will be subject to any religious proselytization from either DHSS or their pediatrician.[3] Having to travel to pick up a copy of the Form may represent an inconvenience, but it is a *de minimis* one and not one that the First Amendment protects against.

### 2. Federal and State Religious Freedom Restoration Acts Do Not Make Signing a Form a Violation of Free Exercise.

In attempting to establish that merely signing a government-provided exemption form is burdensome, plaintiff relies heavily on *Zubik*, *Wheaton*, and *Michigan Catholic Conference* (which was itself vacated by *Zubik*). Doc. 1 at 8; *see Michigan Catholic Conference v. Burwell*, 136 S. Ct. 2450, 2450 (2016). In these cases, the Supreme Court held that the federal Religious Freedom Restoration Act ("RFRA") meant two non-profit corporations did not need to complete the federal Department of Health and Human Service's ("DHHS") contraceptive coverage exemption form— the form known as "EBSA 700"—while their cases were pending appeal. *Wheaton Coll. v. Burwell*, 134 S. Ct. 2806 (2014); *Zubik v. Burwell*, 136 S. Ct. 1557 (2016).

This argument fails to identify a possible Missouri RFRA violation by the Crossroads Defendants for two reasons. First, the federal RFRA and its precedents do not apply to the states or state agencies. *City of Boerne v. Flores*, 521 U.S. 507, 536 (1997). Additionally, no court has

---

[3] Plaintiffs also raise the concern that the statements in the Form do not comply with Mo. Rev. Stat. § 192.072, which obliges DHSS to "develop educational materials which strongly recommend that infants and young children receive complete immunization vaccines" that comply with the requirements of National Childhood Vaccine Injury Act, which requires disclosures about certain risks from vaccination. It is unclear to Crossroads Defendants whether the Form is actually within the class of "educational materials" covered by Section 192.072—another matter DHSS can more appropriately address. But even if it were, the appropriate remedy presumably would be to mandate that DHSS change the Form to include the required language, not to rule the Crossroads Defendants violated any law or Plaintiffs' rights by requiring parents to sign the Form.

yet held that Missouri's state-level RFRA, Mo. Rev. Stat. § 1.302, is directly analogous to the federal RFRA.[4]

Even if federal RFRA law were analogous, however, these cases are inapposite. *Zubik* and *Wheaton* do not create a general First Amendment right to refuse to fill out a government form. Instead, the holding was confined explicitly to the EBSA 700 and its requirements—specifically, the requirement that an entity opting out of contraceptive coverage designate an alternate insurer to provide that coverage. Following *Hobby Lobby*, DHHS was required to provide a form for religious organizations to opt out of contraceptive coverage, and DHHS created the EBSA 700. *See* Brief of Appellant Wheaton College at 9–10, *Wheaton College II*, 791 F.3d 792 (No. 14-2396). This form forced companies to designate an alternate healthcare provider for employees requesting contraceptive coverage and notify their insurer of this designation so that these employees could keep getting contraceptives, in effect short circuiting *Hobby Lobby* and forcing companies to continue providing contraceptives. *Id.* at 15; *Wheaton*, 134 S. Ct. at 2807 ("the obligations of its health insurance issuer and third-party administrator are dependent on their receipt of notice that the applicant objects to the contraceptive coverage requirement."); *Zubik*, 136 S. Ct. at 1559, 194 L. Ed. 2d 696 (2016) ("submitting [the third-party insurer forms] substantially burdens the exercise of their religion.").

The Court did not decide that the *form itself* was burdensome under RFRA, as Plaintiffs intimate, but that the *specific affirmative act* of designating another insurer to provide

---

[4] Missouri's RFRA equivalent has never been interpreted to be coextensive with the Federal RFRA, or to extend the federal precedent under RFRA to Missouri. *Doe v. Greitens*, 530 S.W.3d 571, 574 n.1 (Mo. Ct. App. 2017). In a comprehensive survey of state RFRA equivalents, including Missouri's specifically, the Third Circuit Court of Appeals, noted that while most RFRAs contain "the same fundamental structure and purpose," there are a host of differences between each of them, each other, and the federal RFRA. *Combs v. Homer-Centr. Sch. Dist.*, 540 F.3d 231, 262 (3d Cir. 2008)

13515078v.1

contraceptives was prohibited under RFRA, because it required the entities to actively participate in the procurement of contraceptive coverage, which the entities regarded as equally offensive to their consciences as having provide the coverage directly.  There is no equivalent affirmative step with respect to the Form. Crossroads' compliance with the Form requirement does not violate the Missouri RFRA.

### 3. The Requirement to Sign a Form does not Violate "Equal Protection as Between Religious Objectors," as the Bakers Allege.

Plaintiffs repeatedly allege that Crossroads "elevates form over substance" and is implicitly favoring the religious interpretation of pro-vaccine parents and disfavoring their own anti-vaccine religious beliefs. Doc. 1 at 9.  However, the Eight Circuit Court of Appeals has already settled that merely because a neutrally applied school policy comports with the religious interpretation of some parents and contradicts that of others, such a law does not fail under the First Amendment. *Clayton by Clayton v. Place*, 884 F.2d 376, 380 (8th Cir. 1989). In *Clayton*, parents challenged a school's policy against dances on the basis that the ban was a tacit endorsement of the Baptist church's teachings against dancing, which disfavored their own interpretation that dancing was permitted. *Id.* at 378. The court disagreed, and found "no support for the proposition that a rule . . . becomes unconstitutional due only to its harmony with the religious preferences of constituents or with the personal preferences of the officials." *Id.* at 380.

Plaintiffs' complaint is virtually the same as the one in *Clayton*—that the vaccination policy harmonizes with the religious preferences of some parents and contradicts theirs. But this is by itself not enough to demonstrate viewpoint discrimination under established precedent.  *Id.* ("The mere fact that a governmental body takes action that coincides with the principles or desires of a particular religious group … does not transform the action into an impermissible establishment of religion.").

13515078v.1

**4.      Requiring the Bakers to Sign the Form is not Compelled Speech Because the Form is not Religious Expression.**

Plaintiffs also suggest throughout their complaint that, because the form allegedly endorses a viewpoint opposite of their religious interpretation, being required to sign it is compelled religious speech.  Being required to fill out a form is not itself a form of compelled speech.  *See Roman Catholic Archdiocese of Atlanta v. Sebelius*, 1:12-cv-03489-WSD, 2014 WL 1256373, at *28 (N.D. Ga. Mar. 26, 2014) ("The compulsion to fill out a form … is merely incidental to the regulation of conduct" and does not constitute compelled speech); vacated in part on other grounds by *Eternal Word Television Network, Inc. v. Secretary of the U.S. Dept. of Health and Human Servs.*, 818 F.3d 1122 (11th Cir. 2016); *see also Doe v. Banos*, 416 Fed. Appx. 185, 188 (3d Cir. 2010) (requirement that parent sign form relating to child's participation in school-sponsored lacrosse program did not constitute compelled speech that violated the First Amendment).

Moreover, the Crossroads Defendants submit that a reasonable reading the Form does not support a conclusion that the statements it contains regarding vaccines are being endorsed by the signatory.  Those statements appear to the Crossroads Defendants as speech directed at the signatory, by DHSS, and not the speech, compelled or otherwise, of the signatory.  *See* Ex. 3.

Finally, the "compelled speech" argument is belied by Audrey Baker's written statement, in which she expressly states that she *is* willing to sign the Form if Crossroads were to provide one to her.  *See* Ex. A.  This prior voluntary statement of willingness to fill out the Form belies any claim now presented that the mere act of having to fill out the Form is offensive to Plaintiff's religious beliefs.  Plaintiffs cannot plausibly claim it would violate their constitutional rights to require them to sign a form which, only a few weeks ago, they volunteered to fill out.

13515078v.1

### 5. The Potential Enrollment Disruption Does Not Violate W.B.'s Procedural Due Process Rights.

Plaintiffs also complain that W.B. is subject to "an unauthorized indefinite suspension without due process pursuant to 167.171 RSMo." Doc. 5 at 2. This is not the case. Section 167.171 is a *disciplinary* statute, which authorizes summary suspensions for up to ten days and only after ten days confers hearing and appeal rights. *See* Mo. Rev. Stat. § 167.171.1 ("The school board … may authorize the summary suspension of pupils by principals of schools for a period not to exceed ten days[.]"). Even assuming *arguendo* that Section 167.171 applies in this situation—which Crossroads disputes—the right to a hearing attaches only after ten days of suspension—a point that has not yet occurred with regarding to W.B.

Plaintiffs have received notice of the reason for W.B.'s potential future suspension and how to avoid it, and have been given a generous grace period in which to cure the issue. The Crossroads Defendants have communicated with the parents about this by email and phone, allowing more than adequate opportunity for the parents to detail the reasons for their refusal to obtain and complete the Form. *Plaintiffs have not requested any additional process*: they have not sought an opportunity to meet with Parker or the Crossroads board to explain the basis for their objections to obtaining and filling out the Form or why having to do so unduly burdens them, or to otherwise object to requiring the Form to document their objection to vaccination.

Crossroads' approach to this matter is consistent with and sufficient under U.S. Supreme Court precedent on due process in educational suspensions. *See Goss v. Lopez*, 419 U.S. 565, 581 (1975) (students facing a disciplinary suspension of ten days or less received sufficient due process via "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story"). Indeed, in cases such as this where the suspension is not due to a disciplinary infraction, the requirements of

14

constitutional due process are *even lower*. *See Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 79 (1978) (noting that "[d]ismissals for academic (as opposed to disciplinary) cause do not necessitate a hearing before the school's decisionmaking body").

Here, the Crossroads Defendants are merely following a binary state rule—if parents submit a completed original Form, their child is exempted from vaccination requirements; if parents do not submit a completed original Form and the child remains unvaccinated, Missouri law prohibits that child's attendance in school. Adequate process for this type of suspension must be even less than the academic dismissals at issue in *Horowitz*, which the Court ruled required no formal hearing at all. *See id.* at 86 (noting the "significant difference between the failure of a student to meet academic standards and the violation by a student of valid rules of conduct," a "difference call[ing] for far less stringent procedural requirements"). This is because unlike academic dismissals, there is little to no room for development of any factual record that would impact Crossroads Defendants' obligations under state law with regard to vaccination rules. The Crossroads Defendants lack discretion to ignore the DHSS requirements, so no purpose would be served by formal process anyway. Regardless, Plaintiffs have never requested any further process to express their objections in the first place.[5] Instead, they filed this suit.

Finally, this argument is premature. W.B. has not yet been suspended at all. If his parents complete the Form, his enrollment will not be interrupted. The issue of whether any such suspension violates Missouri disciplinary statutes or procedural due process rights can and must wait until (1) such suspension exceeds 10 days and (2) Crossroads refuses to provide adequate due process. Until then, it is premature.

---

[5] The Crossroads Defendants note that formal process is clearly available to Plaintiffs to challenge DHSS's Form—the primary subject of their allegations—even if DHSS lacks a specific procedure to challenge the particular form. *See* Mo. Rev. Stat. § 536.150.

13515078v.1

**B.        Plaintiffs Have Failed to Establish Irreparable Injury.**

"To succeed in demonstrating a threat of irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *S.J.W. ex rel. Wilson v. Lee's Summit R-7 School Dist.*, 696 F.3d 771, 778 (8th Cir. 2012) (internal quotation marks omitted). The true harm at issue here, despite Plaintiffs' framing of the issues, is the alleged harm to the parents' religious exercise and First Amendment rights—which is a *de minimis* harm, if any (as discussed above). Of course, the *consequence* of the parents' refusal to complete the Form is W.B.'s possible interruption of enrollment at Crossroads.

Plaintiffs thus identify the "loss of educational services" by W.B. as the harm at issue. Doc. 7 at 2. Loss of educational services does not generally constitute irreparable harm. For example, federal courts have long recognized that "compensatory education," in the form of remedial services and related educational expenses, is an available remedy for the loss of free appropriate public education under the Individuals with Disabilities in Education Act. *See J.B. ex rel. Bailey v. Avilla R-XIII School Dist.*, 721 F.3d 588, 593 (8th Cir. 2013) ("Compensatory damages are not available through the IDEA. Compensatory education, however, is.") (internal citations omitted); *Birmingham v. Omaha School Dist.*, 220 F.3d 850, 856 (8th Cir. 2000). While lost educational time is unfortunate, it is not irreparable.

Moreover, Plaintiffs have failed to demonstrate that they could not have enrolled W.B. in another school or otherwise provided him educational opportunities (by, for example, homeschooling him). The Western District has held that such a showing is necessary to establish that a loss of educational opportunities represents an irreparable harm. *See Salau v. Denton*, 139 F. Supp. 3d 989, 1013 (W.D. Mo. 2015); *see also Washington v. Ladue School Dist. Bd. of Educ.*, 564 F. Supp. 2d 1054, 1057-58 (E.D. Mo. 2008) ("Plaintiff has completely failed to show that he

16

will experience irreparable harm if an injunction is not issued. Indeed, the record and arguments show that Plaintiff has free public education available to him wherever he resides. Nowhere has it been presented that Plaintiff has attempted to, and has been refused free public education in the district in which he actually resides. Moreover, because Plaintiff has *not* attempted to secure free public education in the district in which he actually resides, any injury Plaintiff may be experiencing is due entirely to his own actions, or inactions.") (emphasis in original); *cf.*, *S.J.W.*, 696 F.3d at 778-79 (being forced to enroll at another school was not irreparable harm).

Additionally, Plaintiffs themselves, and not the Crossroads Defendants, are the cause of any pending "loss of educational services" by W.B., since they are the ones refusing to obtain and fill out the Form. It is being made to fill out the Form that is the actual nexus of harm to Plaintiffs.

While having to obtain and fill out government paperwork is an all-too-common source of frustration, it is surely not a harm that is sufficiently "great" as to represent legally cognizable irreparable harm. *See, e.g., J'Weial v. Gyles*, No. 2:18-cv-2766-KJN P, 2019 WL 1040364, at *2 (E.D. Cal. Mar. 5, 2019) (refusal of government employee to provide a form was not irreparable harm where "plaintiff does not allege that he is unable to obtain" the form "from other sources"). This is particularly true since Plaintiffs have previously indicated a willingness to fill out the Form, if Crossroads would provide one. *See* Exhibit 1.[6] And, as set forth above, Plaintiffs have not alleged any cognizable religious objection to having to either obtain or fill out the Form, so the putative irreparable harm flowing from having to obtain the form cannot be a violation of their free exercise rights. At most, the "harm" to Plaintiffs is the *de minimis* burden of having to obtain

---

[6] At around the time of this request, Copeland reached out to the Jackson County and Kansas City health departments to try to obtain a copy of the Form to provide to parents in Plaintiffs' position. *See* Ex. 2 at ¶ 9. These agencies affirmed parents must obtain the Form themselves. *See id.*

13515078v.1

a copy of the Form from their pediatrician or a DHSS office and fill it out – an annoyance, perhaps, but not "irreparable harm" sufficient to justify a TRO.

**C.     The Balance of Harms Favors Denial of the TRO.**

Even assuming *arguendo* that having to fill out the Form constitutes any legally cognizable harm at all to Plaintiffs, any such harm is substantially outweighed by the harm to the Crossroads Defendants that would flow from the issuance of a TRO requiring them to enroll W.B. without regard to whether his parents have complied with Missouri law and used the Form to document their religious objection to W.B.'s vaccination.  The requested TRO would impose at least two categories of harm on the Crossroads Defendants, either of which significantly outweighs any conceivable harm to Plaintiffs.

First and foremost, requiring the Crossroads Defendants to accept Plaintiff's prior statements in place of filling out the Form will impair the ability of the Crossroads Defendants to adequately keep track of the vaccination status of the students in their charge.  The Crossroads Defendants require the Form because doing so is mandatory under state law.  But they also require the Form because having a single form of religious objection confers important administrative efficiencies in tracking the vaccination status of the student population at Crossroads.  It is of paramount importance to the Crossroads Defendants that they know which students at Crossroads have received which vaccinations – and which have not. See Ex. 2 at ¶¶ 12-13.

This is because if there is an outbreak of a particular vaccine-preventable disease, the Crossroads Defendants are required to take appropriate steps to combat that outbreak.  *See* Mo. Rev. Stat. § 210.003.4 ("In the event of an outbreak or suspected outbreak of a vaccine-preventable disease within a particular facility, the administrator of the facility shall follow the control measures instituted by the local health authority or the department of health and senior services or

18

both … as established in Rule 19 CSR 20-20.040.”); 19 CSR 20-28.010(1)(C) (same).  In the event of such an outbreak, the Crossroads Defendants would consult their records to determine which children were at risk.  *See* Ex. 2 at ¶ 13.  In such an eventuality, it would be crucial for the Crossroads Defendants to have clear, reliable and consistent records of the vaccination status of each student.  *Id*.  While the Crossroads Defendants require the Form primarily because it is required by DHSS and state law, use of the Form also facilitates this important interest.

In the event of such an outbreak, it is vital that the Crossroads Defendants have immediate access to information about which students have not received which vaccinations, so that appropriate steps can be taken to ensure the safety of those students.  The Form facilitates this by having clear and discrete check boxes for each vaccine the student has not received due to the religious objection.  *See* Exhibit 3.  In contrast, if every parent claiming a religious exemption from one or more vaccines were allowed to submit their own self-drafted religious exemption claim, it would require the Crossroads Defendants to decipher and interpret those statements to determine which vaccinations the students at issue had or had not received.  If they interpreted such an *a la carte* exemption wrongly, and missed a student who was unvaccinated against the disease that was experiencing the outbreak, the consequences could obviously be dire.  Use of the Form facilitates this vital interest, and a TRO prohibiting the Crossroads Defendants from requiring the Form would substantially impair this interest.[7]  Weighed against the—at most—*de minimis* burden on Plaintiffs, this strongly counsels in favor of requiring the Form.

Moreover, the Crossroads charter system currently has fifteen children in the same situation as W.B. Copeland Dec. ¶ 14. Granting a TRO here to allow W.B.’s parents to avoid submitting a

---

[7] While any TRO granted would, on its face, presumably only apply to W.B., as a practical matter if one were issued there would be a high probability that other similarly situated students at Crossroads would also seek similar relief.

Form for him would put Crossroads in the position of treating W.B. differently than those other students. This deviation for one student would create disarray in Crossroads' system of requiring religious exemptions and create further opportunity for legal risk.

The fact that W.B. has attended school for the beginning part of the year does not, as Plaintiffs contend, demonstrate that there is "no harm to Crossroads in allowing W.B. to attend kindergarten unvaccinated for more than two weeks in September." Doc. 7 at 3. For the reasons set forth above, allowing W.B. to attend without completing the required Form was a harm to the Crossroad Defendants, but it was one they were willing to endure, for a time, in the spirit of compromise and in an effort to not penalize W.B. for his parents' inability or unwillingness to take the simple step of timely filling out the Form.

The Crossroads Defendants, in an effort to ensure that W.B. (and other similarly situated students received an education) allowed for a generous grace period before requiring the submission of the Form. The Crossroads Defendants also made efforts to obtain copies of the Form so that they could provide them to parents in Plaintiffs' position, but were rebuffed by the relevant agencies. *See* Ex. 2 at ¶ 9. It would both be unfair and create profoundly perverse incentives to hold that the Crossroads Defendants' prior generosity prevented them from ever after enforcing this rule and requiring submission of the Form.

**D.      The Public Interest Favors Denial of the Request for TRO.**

For similar reasons, the public interest favors denying Plaintiff's requested TRO. The public has a compelling interest in ensuring that Crossroads and other educational institutions have the capability, in the event of an outbreak of vaccine-preventable disease, to respond promptly and to protect the well-being of students who have not been vaccinated against that disease as quickly

as possible. Such actions not only benefit those students, but also reduce the risk of the spread of the disease more generally by breaking potential disease-transmission links.

While the State Defendants are ultimately responsible for defending the state's regulatory religious exemption scheme, including the Form, Crossroads' compliance with the system in place is consistent with this public interest. Since the proposed TRO would muddy Crossroads' record keeping and introduce greater possibility for errors in the system, a TRO would thus be adverse to the public interest.

## CONCLUSION

For the foregoing reasons, the Crossroads Defendants respectfully ask the Court to deny Plaintiffs' motion for a temporary restraining order.

**SPENCER FANE LLP**

/s/ Stephanie Lovett-Bowman
Stephanie Lovett-Bowman       MO #63045
Angus W. Dwyer                MO #66443
1000 Walnut, Suite 1400
Kansas City, MO 64106
Telephone:    (816) 474-8100
Fax:          (816) 474-3216
slovettbowman@spencerfane.com
adwyer@spencerfane.com

ATTORNEYS FOR DEFENDANT
CROSSROADS ACADEMY-CENTRAL STREET,
KARIS PARKER AND EVA COPELAND

13515078v.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed electronically with the United States District Court for the Western District of Missouri, with notice of case activity generated and sent electronically on this 10th day of September 2019, to all counsel of record.

/s/ Stephanie Lovett-Bowman
Attorney for Defendant Crossroads Academy-
Central Street, Karis Parker and Eva Copeland

13515078v.1