IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

**W.B.,** a minor, by and through his parents and next friend, **Zach Baker** and **Audrey Baker** et al. )
)
)
Plaintiffs, )
)
v. ) Civil No. 4:19-cv-00682-HFS
)
**Crossroads Academy-Central Street** )
et al. )
)
)
Defendants )

**MEMORANDUM RULING**

Missouri school children are required to be vaccinated, but the statutory requirement contains an exemption for use by parents and children having objections on religious grounds. A small child currently enrolled at Crossroads Academy in Kansas City and his parents (the Bakers) have a grievance concerning the form of exemption claim used by the Missouri Department of Health & Senior Services (DHSS), the agency charged with enforcement of the law. A handwritten claim for exemption was rejected by the school officials. A "sample" exemption form available online is not acceptable to the agency or the school. The Bakers decline further effort to submit the approved form. There is thus a procedural impasse, temporarily avoided by an order proposed by the parties.

1

The wording of the DHSS form is now in controversy because the parents contend it expresses favorable views about vaccinations and is objectionable both as governmental speech and because it allegedly requires adoption of disfavored language by the parents.

Before the court is the Bakers' motion for a preliminary injunction.[1] The motion will be denied, thus terminating the Stipulated Temporary Restraining Order (Doc. 20) previously entered to protect the child from suspension or expulsion. Absent further judicial protection the child may attend school if vaccinated or if a State-approved exemption form is submitted to the school.

Although the litigants have submitted quite extensive briefing, the basic issues are not difficult. Vaccination obligations have long been approved by the courts, with or without religious exemptions. The State's freedom to advocate vaccination as governmental policy is also well settled. The official form containing modest advocacy is divided into parts which separate the advocacy language by the State from the wording to be used by a parent claiming an exemption. It thus passes muster as constitutionally acceptable.

---

[1] The parents have separately filed motions, each seeking "preliminary and permanent injunction." Docs. 2 and 4. They both seek to maintain the status quo. Briefing deals with issues pertinent to preliminary injunction. It is premature to consider permanent relief. For clarification I will deal only with relief against State and school officials pending litigation. My denial of a permanent injunction at this time will be without prejudice.

Argument that the form should be available outside of public health offices does not present a Federal question of substance. My supposition has been that the procedure is used to control use of the forms, and to assure that a parent receives the message from the State. In any event, that process is a matter of State law or procedure that can and should be resolved by State officials, including the state judiciary if necessary. This proceeding under 42 U.S.C. § 1983 does not cover questions of state law.

I.  Mandatory Vaccination Authority

Plaintiffs seek to enjoin enforcement of the Missouri statute which makes it "unlawful for any student to attend school unless he (or she) has been immunized as required under the rules and regulations of the department of health and senior services, and can provide satisfactory evidence of such immunization," subject further to exemptions based on "religious beliefs or medical contraindications." Section 167.181(2) and (3), RSMo. The Bakers recognize that in 1905 the Supreme Court sustained the constitutionality of required vaccinations in <u>Jacobson v. Massachusetts</u>, 197 U.S. 11, but contend that constitutional law has progressed in their favor since then. Doc. 5, pp. 11-15. As of a century ago, it was well settled that vaccination as a "condition precedent to the attendance of children upon schools in their communities is a valid exercise of the

3

police power for the prevention of disease and the preservation of health." Herbert v. Demopolis School Bd. of Educ., 73 So. 321 (Ala. 1916)(citing Jacobson and State authorities). The most current State and Federal decisions also uniformly support vaccination requirements, including governmental advocacy of vaccinations, despite various scientific, religious, family autonomy and general libertarian objections by parents. See, e.g., V.D. v. State, 2019 WL 3886622 (E.D.N.Y.)(and cases cited); In re K.Y.-B, 215 A.3d 471 (Md. App. 2019)(with rationale and cases cited). Jacobson continues to represent well-established law that a parent "has no constitutional right to an exemption" from vaccination requirements. Nicolao v. Lyon, 875 F.3d 310, 316 (6th Cir. 2017). See also Phillips v. City of New York, 775 F.3d 538, 542-3 (2d Cir. 2015). Plaintiffs cite no vaccination litigation rulings to the contrary, despite the prevalence of controversy on this subject from a significant group of protesters. New York Times, Sept. 24, 2019, page 1 ("Debate Over the Shots Required for School Heats Up Again").[2]

---

[2] To the extent plaintiffs seek a reconsideration of settled law, based on various theories never judicially related to vaccination programs, perhaps such reconsideration is available at the appellate level or when considering a permanent injunction. Plaintiffs erroneously suggest a pertinent change of law by reason of the Religious Freedom Restoration Act (RFRA), which "applies only to the federal government." George v. Kankakee Community College, 2014 WL 6434152 *5 (C.D. Ill.). Predictions that contraception-related decisions invoking RFRA would result in a "flood of religious objections" to Federal medical procedures such as vaccinations (Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 732 (2014)) have apparently not been borne out. Any alleged violation of the Missouri RFRA (Section 1.302.1, RSMo) is not before me. Use of supplemental jurisdiction would not be welcome in this dispute which currently centers on administrative practice in Missouri.

II. The Religious Exemption Form

A. Governmental Advocacy of Vaccination

A copy of the disputed DHSS form is reproduced by the Bakers in the father's brief supporting a preliminary injunction. Doc. 5, p.6. The DHSS message, comprising the top half of the form, states as follows:

> "We strongly encourage you to immunize your child, but ultimately the decision is yours. Please discuss any concerns you have with a trusted healthcare provider or call the immunization coordinator at your local or state health department. Your final decision affects not only the health of your child, but also the rest of your family, the health of your child's friends and their families, classmates, neighbors, and community.
>
> Unimmunized children have a greater risk of contracting and spreading vaccine-preventable diseases to babies who are too young to be fully immunized and those who cannot be immunized due to medical conditions. in the event of an outbreak of vaccine-preventable disease within a particular facility, children who are not fully immunized or do not have documented laboratory evidence of immunity shall not be allowed to attend school or day care until the local health authority declares the designated outbreak or health emergency has ended."

Although the Bakers say they have religious scruples against vaccination, they are not entitled to insist on governmental silence rather than advocacy. Advocacy of vaccination by Michigan State officials was specifically approved in Nicolao, supra, in accordance with accepted principles allowing governmental advocacy of practices to effectuate the public policy of the State. The members of the Supreme Court, in dicta, recently again recognized the

5

governmental right to speak in support of its programs, mentioning vaccinations. Walker v. Texas Div., Sons of Confederate Veterans, 135 S.Ct. 2239, 2245-6, 2255 (2015).

B. Targeted Use, "Captive Audience"

Assuming the State's right to advocate vaccination of school children, plaintiffs are apparently particularly resentful of the State's advocacy in the upper half of the form which parents are to use to claim religious objections.[3] The most obviously useful opportunity for last-minute persuasion would be in that document. Plaintiffs fail to show why DHSS should be deprived of its opportunity for effective salesmanship.

In the name of Equal Protection, plaintiffs complain about the targeting process, which may better be considered as a claim of underinclusiveness – that is, limitation of the message to address particular groups, in this case parents wishing to assert religious objections. The Supreme Court recently agreed with such an objection, but in a very different context. NIFLA v. Becerra, 138 S.Ct. 2361, 2275-6 (2018). In appropriately publicizing the availability of family planning

---

[3] One of the problems in plaintiffs' briefing is that they treat this case as pitting one set of religious beliefs against another, thus invoking issues of neutrality. While Missouri law gives them free rein to label their beliefs as religious in nature, and the court has no role in appraising sincerity, the State's imposition of vaccination requirements must be considered secular in nature – otherwise the whole program would be unconstitutional. As in flag salute or national anthem controversies, persons with religious objections may deserve accommodation, but have no legal right to cripple activities that are appropriately designated as secular.

6

facilities that offered abortions, but requiring posting in facilities that opposed abortions, the Court concluded that "California cannot co-opt the licensed facilities to deliver its message for it." In this case, the State is using its own facilities to deliver its message. No case is cited that would bar effective salesmanship by the State, targeting the group most needing its message.

The Supreme Court has endorsed a freedom of speech choice of venue, over objections by utility company customers to billing inserts of a controversial nature. Consolidated Edison Company of N.Y. v. Public Service Commission, 447 U.S. 530 (1980). Even under the enhanced protections of the Missouri RFRA, the Missouri Supreme Court recently sustained a requirement that an abortion provider supply a prospective patient with a booklet containing the State's message on the subject. It held this did not impermissibly infringe on the woman's rights, at least when there was no requirement that she read the booklet. Doe v. Parson, 567 S.W.3d 625 (Mo. banc 2019); Compare, Doe v. Parson, 388 F.Supp.3d 1345 (E.D.Mo. 2019), appealed 3/20/19. The advocacy here is considerably less intrusive. As in the Consolidated Edison case, the recipient can easily escape full exposure to objectionable material if that is his or her choice. 447 U.S. at 542.

### C. No "Compelled Speech"

7

Case 4:19-cv-00682-HFS   Document 52   Filed 11/22/19   Page 7 of 10

The parental signature at the bottom of the religious exemption form serves to verify the required parental inserts of the child's name, the types of vaccination objected to, and the grounds for the exemption, simply asserted as "religious." Filling in, signing and submitting the form in no way comments on or endorses the State's message, quoted above, which is separated on the form by a line dividing the upper and lower portions and clearly identified as DHSS language. Any fanciful contentions to the contrary are not reasonably supported by the document, read as a whole. Moreover, plaintiffs' complaints are not part of their "religious" objections, which would be satisfied by release from the vaccination requirement.

The nearest legal problem area may be in the contention that contraception opponents should not be required to be "complicit" in the procedure by filing exemption forms. See, <u>Wheaton College v. Burwell</u>, 573 U.S. 958 (2014). In this situation, however, the filing of forms does not advance vaccination use but simply results in an exemption.

For the reasons stated, it is quite unlikely that plaintiffs will ultimately prevail in obtaining an injunction against the State and school officials.

III.   Preliminary Injunction Considerations

Under the Eighth Circuit's familiar <u>Dataphase</u> standards, a trial court

dealing with a preliminary injunction motion needs to consider (1) the threat of irreparable harm to the movant, (2) the balance between such harm and the injury likely inflicted on other parties, (3) the plaintiffs' likelihood of success on the merits, and (4) the public interest. Dataphase Sys. Inc. v. CL Sys., Inc., 640 F.2d 109 (1981). Where a party is unlikely to succeed on the merits, as here, this may be the predominant consideration in denying relief.

The other factors, considered together, likewise favor denial of the motion. Assuming plaintiffs continue to have strong objections to vaccinations they can readily obtain an official exemption form, execute it, and submit it, thus obtaining the desired exemption from vaccination. Possible harm to the child, by suspension from school, would be the result of parental failure to obtain, execute and submit the DHSS religious exemption form which can be acquired by much less effort than writing a brief. The "key to the school-house" is available and would protect the child from harm – without needing a court order. The harm to the State's program resulting from granting the motion would be unpredictable, but a preliminary injunction would encourage disregard for the program, particularly since an order would be likely publicized. The balance of harm thus is a factor favoring the State defendants. The public interest also favors the defense, assuming the vaccination program significantly safeguards public health. Taking

9

Case 4:19-cv-00682-HFS   Document 52   Filed 11/22/19   Page 9 of 10

notice of the adoption of such programs nationwide I have no reason to conclude otherwise, and plaintiffs have not alerted me to a desire to present a battle of experts.[4]

For the foregoing reasons, plaintiffs' motions for a preliminary injunction and permanent injunction (Docs. 2 and 4) will be DENIED, with prejudice as to a preliminary injunction, and without prejudice as to a permanent injunction. In the interest of allowing any desired submission of the completed and executed DHSS religious exemption form, or orderly appellate filings if ripe, the Clerk is instructed to record a DENIAL of the preliminary injunction aspect of the motions on December 16, 2019. To the extent plaintiffs have also moved for a permanent injunction (See footnote 1) the Clerk should then record a DENIAL WITHOUT PREJUDICE of the motions for a permanent injunction.
SO ORDERED.

/s/ Howard F. Sachs

**HOWARD F. SACHS**
UNITED STATES DISTRICT JUDGE

November 22 , 2019

Kansas City, Missouri

---

[4] Plaintiffs have sought a hearing on the motion, but even if there are some marginal and immaterial factual disputes the motion can be and is being decided on the legal issues.

10

Case 4:19-cv-00682-HFS   Document 52   Filed 11/22/19   Page 10 of 10